IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
- BROWNSVILLE DIVISION -

United States District Court
Southern District of Texas
ENTERED
APR 19 2000
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| SOUTHWEST ASSOCIATED PAINTERS, INC. § § § | |
| VS. § | CIVIL ACTION NO. B-98-011 |
| § | |
| GLOBAL MARINE DRILLING COMPANY, § AS CLAIMANT OF MODU GLOMAR § CELTIC SEA § | |

## MEMORANDUM OPINION

### INTRODUCTION

In 1996, Global Marine Drilling Company ("Global") brought the Celtic Sea, a floating hotel for offshore workers, to Brownsville, Texas, in order to convert it to an offshore drilling rig. The magnitude of this project is demonstrated by the fact that Global expended $287,000,000.00 doing the conversion. Global wanted to complete the project as expeditiously as possible so that the new rig would become a revenue producer rather than a capital consumer, thus Global designated the conversion as a "fast track" project. Global set up a branch office at the Amfels shipyard in the Port of Brownsville, Texas to manage the conversion.

The project was complex. It required a high level of coordination between different contractors and subcontractors to proceed efficiently. This coordination was implemented by scheduled weekly meetings between representatives of Global and those working on the project to plan the details of the work as it progressed.

A substantial amount of painting was involved in the conversion. Southwest Associated

Painters, Inc. ("SWAP") was the successful bidder on one portion of the painting work, designated as Purchase Order 369. In its bid, SWAP estimated that the job would take thirty men working ten hour days 140 days to complete. Global agreed to pay SWAP $1,491,500.00 for this job. SWAP agreed to finish this work by October 10, 1997.

Global decided to expand the painting on the Celtic Sea. SWAP was the successful bidder on this expanded work which proceeded as Purchase Order 369A. Global was to pay SWAP $1,033,357.00 for the work described in Purchase Order 369A.

SWAP started in June 1997. Problems arose almost immediately. One SWAP supervisor was fired for stealing. Another supervisor was sent to prison for offenses unrelated to the project. A third supervisor had serious health problems. Consequently, SWAP frequently did not have representatives at the weekly meetings designed to coordinate the work.

Global threatened to terminate SWAP if there were not significant improvement. SWAP placed a new on-site manager on the job, David Strobel. The progress of the work improved markedly after Mr. Strobel's designation as manager. SWAP also promised to place more workers on the job.

However, during September 1997, it was obvious that SWAP was not going to complete the job on time. Thus, Global gave some of the work to another painting contractor, Service Offshore Painting, Inc. ("S.O.P.").

Finally, Global severed its relationship with SWAP on December 12, 1997. SWAP then submitted an invoice to Global for $1,219,004.71 for extra work supposedly performed outside the scope of the two purchase orders.

On December 19, 1997, representatives of Global and SWAP met in an effort to resolve the

mutual outstanding obligations. Global representatives thought that there had been agreement and paid SWAP $200,000.00. However, SWAP filed this suit.

SWAP claims that it is entitled to be paid $2,293,554.00 for extra work assigned to it by Global. Global claims that it overpaid SWAP $29,302.08 and that it is entitled to recover that amount plus attorneys fees and costs.

"Ah, but a man's reach should exceed his grasp,

  Or what's a heaven for?"[1]

Unfortunately, SWAP's reach exceeded its grasp. SWAP was new to the painting business, and it had never had a project of the magnitude of the Celtic Sea project. At the same time it was attempting to work on the Celtic Sea, SWAP was working on another project in Brownsville. After hearing all the evidence in this case ably marshaled and presented by the attorneys for both parties this court has reached the conclusion that SWAP's management simply was not up to the task of dealing with the Celtic Sea project while at the same time trying to complete the other project in Brownsville.

## FINDINGS OF FACT

**Purchase Order 369**

1. SWAP did not complete or substantially perform the work called for under Purchase Order 369.

2. The completion date of Purchase Order 369 was October 10, 1997.

3. SWAP failed to complete or substantially perform the work called for by Purchase Order 369 on or before the date on which Global terminated, in part, SWAP's performance under Purchase Order 369.

---

[1]    *Andrea Del Sarto*, Robert Browning

4.  The contract value of the work not completed or performed by SWAP under Purchase Order 369 is $609,590.

5.  The contract value of the work actually completed or performed by SWAP under Purchase Order 369 is $758,905.

6.  SWAP was behind schedule on the performance of the work called for by Purchase Order 369 when Global terminated SWAP, in part, from the project described in that Purchase Order.

7.  Global terminated SWAP, in part, from Purchase Order 369 in mid-November 1997.

8.  Portions of the work that was done by SWAP prior to its partial termination in mid-November 1997, called for by Purchase Order 369, were of substandard quality.

9.  Prior to partial termination, Global requested from SWAP adequate assurance of timely and workmanlike performance under Purchase Order 369.

10. Global's payment of $879,962 on invoices submitted under Purchase Order 369 amount to an overpayment of $121,057 on that Purchase Order.

**Purchase Order 369A**

11. SWAP failed to complete or substantially perform the work under Purchase Order 369A on or before the completion date.

12. SWAP failed to complete or substantially perform the work under Purchase Order 369A on or before the date on which Global terminated, in part, SWAP's performance under Purchase Order 369.

13. SWAP did not complete or substantially perform the work called for under Purchase Order 369A.

14. The completion date of Purchase Order 369A is September 30, 1997.

15. SWAP was behind schedule on the performance of the work called for by Purchase Order 369A when Global terminated SWAP, in part, from the project described in that Purchase Order.

16. SWAP could not have completed or substantially performed the work called for under Purchase Order 369A by the required completion date.

17. The contract value of the work actually completed or performed by SWAP under Purchase Order 369A is $556,999.92.

4

18. The contract value of the work not completed or performed by SWAP under Purchase Order 369A is $476,357.08.

19. Global terminated SWAP, in part, from Purchase Order 369A on or about October 3, 1997.

20. Portions of the work that was done by SWAP, prior to its partial termination on October 3, 1997, called for by Purchase Order 369A was of substandard quality.

21. Global's payment of $403,335 on invoices submitted under Purchase Order 369A amount to an underpayment of $153,664.92 on that Purchase Order.

**Both Purchase Orders**

22. SWAP allowed the number of persons performing work under Purchase Order 369 and 369A to go below thirty persons during the week ending September 14, 1997 in breach of Purchase Order 369 and SWAP's bid.

23. Prior to David Stobel's direct supervisory involvement in the Global work, SWAP regularly failed to attend the meetings scheduled by Global to coordinate the efforts of the various contractors on the GLOMAR CELTIC SEA as agreed in the letter agreement between SWAP and Global dated May 27, 1997.

24. The value of the work performed by SWAP outside the scope of the Purchase Orders on a time and materials basis as of December 7, 1997 was $138,090.

25. Portions of the work that was done on a time and materials basis was of substandard quality.

26. Prior to the respective partial terminations, SWAP did not prove it was ready, willing and able to perform its obligations under the Purchase Orders.

27. Considering the aggregate value of the work performed by SWAP on Purchase Orders 369, 369A, and of work performed that was not within the scope of either Purchase Order, and the corresponding payments made by Global, Global has overpaid SWAP $29,302.08 as follows:

| | |
|---|---|
| Overpayment of Purchase Order 369 | + $121.057.00 |
| Underpayment of Purchase Order 369A | - $153,664.92 |
| Value of Time and Material Work | - $138,090.00 |
| Payment December 31, 1997 | - $200,000.00 |
| Net Overpayment | $ 29,302.08 |

5

## CONCLUSIONS OF LAW

1. Global was justified in terminating the unperformed remainder of the contracts, Purchase Orders 369 and 369A, because of SWAP's failure to perform. *Varibus Corp. v. South Hampton*, 623 S.W.2d 157, 159 (Tex. App.-Beaumont 1981, writ ref'd n.r.e.); *Home Reader Service, Inc. v. Grappi*, 446 S.W.2d 95, 98-99 (Tex. App.-Dallas 1969, writ ref'd n.r.e.); *South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1114-16 (5th Cir. 1984).

2. SWAP defaulted on the provisions, terms, and/or conditions of Purchase Orders 369 and 369A, and, as a result, Global was justified in terminating the Purchase Order under the termination clauses of the respective contracts. *Varibus Corp. v. South Hampton*, 623 S.W.2d 157, 159 (Tex. App.-Beaumont 1981, writ ref'd n.r.e.);

3. Failure to perform by Global under Purchase Orders 369 and 369A is excused by SWAP's previous failure to perform a material obligation of those agreements. *Dobbins v. Redden*, 785 S.W.2d 377 (Tex. 1990); *Huff v. Speer*, 554 S.W.2d 259, 262 (Tex. Civ. App.-Houston [1st Dist.] 1977. Writ ref'd n.r.e.) (A delay in compliance beyond a reasonable period is a failure to comply when no date for completion is specified).

4. SWAP wrongfully repudiated, abandoned, and/or failed to perform under Purchase Order 369 and 369A, respectively, and as a result Global was justified in contracting with S.O.P. to complete the work and Global is entitled to recover from SWAP the excess of the reasonable cost of completion over and above the unpaid portions of the contract prices of each Purchase Order. *Bledsoe v. Bowden*, 411 S.W.2d 59, 60 (Tex. App.-Fort Worth 1966, no writ); *Ellis Oil Co. v. Union Oil Co.*, 661 S.W.2d 342 (Tex. App.-Houston [1st Dist.] 1983, no writ; *In re Ferguson*, 183 B.R. 122 (N.D. Tex. 1995).

5. SWAP's claims for breach of contract fail as a matter of law because SWAP presented no proof that it was ready, willing, and able to perform its obligations under Purchase Orders 369 and 369A. *Whitney Properties Corp. v. Moran*, 494 S.W.2d 587, 590 (Tex. App.-Dallas 1973, no writ); *Koch Ind., Inc. v. Sun Co., Inc.*, 918 F.2d 1203, 1214 (5th Cir. 1990).

6. Any failure to perform by Global under Purchase Orders 369 and 369A is excused by SWAP's prior repudiation of those agreements. *Group Health & Life Ins. Co. v. Turner*, 620 S.W.2d 670, 672-673 (Tex. Civ. App.-Dallas 1981, no writ).

7. Any failure to perform by Global is excused because SWAP failed to perform the services in a good and workmanlike manner. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987); *Humber v. Morton*, 426 S.W.2d 554 (Tex. 1968); *D/FW Commercial Roofing Co. v. Mehra*, 854 S.W.2d 182, 186-187 (Tex. App.-Dallas 1993, no writ).

8. Global is entitled to restitution of $29,302.08 as funds paid due to a mistake of fact. *Southwestern Electric Power Co. v. Burlington Northern R.R.*, 966 S.W.2d 467, 469-470;

*Bryan v. Citizen's Nat'l. Bank*, 628 S.W.2d 761, 763 (Tex. 1982); *Community Mut. Ins. Co. v. Owen*, 804 S.W.2d 602, 605 (Tex. App.-Houston [1st Dist.] 1991, writ denied); *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31 (5th Cir. 1963).

9. Global is entitled to recover a reasonable fee of $238,878.00 for the necessary services of its attorney for the preparation and trial of this case. TEX. CIV. PRAC. & REM. CODE § 38.01; *Houston Lighting & Power Co. v. Russ Properties, Inc.*; 710 S.W.2d 711, 712-713 (Tex. App.-Houston [1st Dist.] 1986, no writ).

10. Global is entitled to recover its costs, in the amount of $20,992.54. FED R. CIV. PROC. 54(d); 28 U.S.C. § 1920; *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).

Done at Brownsville, Texas, this 18th day of April, 2000.

                                              John Wm. Black
                                         United States Magistrate Judge

ClibPDF - www.fastio.com